

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BASULTO, | ) Case No. EDCV 13-0502-JPR |
| Plaintiff, | ) |
| vs. | ) MEMORANDUM OPINION AND ORDER<br>) REVERSING COMMISSIONER AND<br>) REMANDING FOR FURTHER |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security, | ) PROCEEDINGS |
| Defendant. | ) |

## I. PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed December 9, 2013, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

1

## II. BACKGROUND

Plaintiff was born on September 7, 1960. (Administrative Record ("AR") 196.) She completed the ninth grade. (AR 233.) Plaintiff previously worked as the manager of a tire-and-rim shop, cashier at a department store and a county fair, and deli worker at a grocery store. (AR 70-71, 88-89, 95-96, 234, 248-52.)

On April 20 and October 1, 2010, respectively, Plaintiff filed applications for DIB and SSI. (AR 27, 98-99, 194-206.) After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge. (AR 127-28.) A hearing was held on July 18, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 65-96.) On July 27, 2012, the ALJ issued a written decision finding Plaintiff not disabled. (AR 27-40.) On August 6, 2012, Plaintiff requested review of the ALJ's decision (AR 20), which the Appeals Council denied on February 20, 2013 (AR 1-5). This action followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to

support a conclusion. <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2008, the alleged onset date. (AR 29.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "degenerative joint disease of both knees, torn meniscus of the left knee, depression, degenerative disc disease of the cervical and lumbar spine, chronic ulnar nerve damage of the right hand and gastroesophageal reflux disease (GERD)." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 30-31.) At step four, the ALJ found that Plaintiff had the RFC to perform "light work" with the following additional limitations:

> the claimant can lift/and or [sic] carry no more than ten pounds; the claimant can stand, walk or sit for six hours out of an eight-hour workday with no more than ten to fifteen minutes standing or walking at a time; the claimant has a sit/stand option of thirty to forty-five minutes with brief position changes with sitting; the claimant's [sic] can occasionally bend, stoop, climb stairs and balance; the claimant can rarely kneel, crouch, squat or crawl; the claimant cannot climb using ladders, ropes or scaffolds; the claimant cannot perform

> work at unprotected heights, around dangerous moving machinery or other hazards; the claimant must avoid concentrated exposure to extreme temperatures or vibrations; the claimant cannot perform a job requiring hypervigilance, intense concentration or work involving high stress; the claimant cannot repetitively or constantly use the right hand, such as keyboarding; the claimant can perform occasional fine manipulation with the right hand; the claimant can perform frequent gross manipulation with the right hand; the claimant can occasionally perform handwriting with the right hand; the claimant is likely to be off task or absent up to ten percent of the workday or workweek due to chronic fatigue, pain and medication side effects.

(AR 31.) Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past work in the tire-and-rim shop. (AR 39.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 39-40.)

## V.   DISCUSSION

Plaintiff alleges that the ALJ erred in (1) evaluating the evidence of her mental impairment, (2) evaluating her RFC and determining that she could perform her past relevant work, and (3) assessing her credibility.[2] (J. Stip. at 3.)

---

[2] For convenience and other reasons, the Court has rearranged the order in which it addresses the disputed issues from that followed by the parties. Although the parties label the second issue listed above as "whether the ALJ erred in her assessment of Plaintiff's residual functional capacity," that issue mainly challenges Plaintiff's ability to perform her past relevant work. (See J. Stip. at 3-10.)

A. <u>The ALJ Erred in Evaluating the Medical Evidence Regarding Plaintiff's Mental Impairment</u>

Plaintiff contends that the ALJ "minimiz[ed]" examining psychologist Douglas W. Larson's opinion by "boil[ing] down his findings to no jobs requiring hypervigilance, high stress or intense concentration." (J. Stip. at 11.) Plaintiff further contends that the ALJ "rejected without a valid reason" the opinions of various state-agency medical consultants who opined that Plaintiff was limited to "simple nonpublic work." (<u>Id.</u>)

1. <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. <u>Id.</u>

When an examining doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting <u>Lester</u>, 81 F.3d at 830-31). When an examining physician's opinion conflicts with another doctor's, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u> The weight given an examining physician's opinion, moreover, depends on whether it is

consistent with the record and accompanied by adequate explanation, among other things. §§ 404.1527(c), 416.927(c).

2. Relevant facts[3]

On November 17, 2009, a doctor at the Arrowhead Regional Medical Center noted that Plaintiff had been having anxiety since she stopped using alcohol two weeks earlier.[4] (AR 355-56.) The doctor opined that Plaintiff's anxiety was likely a withdrawal symptom and advised her to return to the clinic in two weeks for further monitoring. (AR 355.) On December 8, 2009, Plaintiff complained of anxiety and "palpitations" once every two or three weeks; the doctor advised her to "start Zoloft" and that Xanax was "ok" for 4-6 weeks.[5] (AR 353-54.)

On April 6, 2010, Plaintiff's affect was anxious and she had difficulty concentrating, but she was not depressed and had no suicidal or homicidal ideations. (AR 338.) The doctor noted that Plaintiff had "stopped Zoloft [because] she didn't want too many Rx's" and was experiencing increased anxiety; the doctor advised her to "restart Zoloft." (AR 337-38.) On April 19,

---

[3] Because the parties are familiar with the facts, they are summarized here only to the extent relevant to the contested issues.

[4] All of Plaintiff's mental-health treatment was through the Arrowhead Regional Medical Center.

[5] Zoloft, or sertraline, is a selective serotonin reuptake inhibitor used to treat depression, obsessive-compulsive disorder, panic attacks, posttraumatic stress disorder, and social anxiety disorder. Sertraline, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697048.html (last updated Apr. 13, 2012). Xanax, or alprazolam, is a benzodiazepine used to treat anxiety and panic disorders. Alprazolam, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html (last updated Nov. 1, 2010).

2010, a doctor noted Plaintiff's anxiety disorder and advised her to increase her dose of Zoloft. (AR 335.)

On January 18, 2011, a doctor found that Plaintiff's depression and anxiety had "improved" and she was "doing much better" with an increased dose of Zoloft; the doctor advised her to continue to take her medication. (AR 521-22.)

On February 22, 2011, psychologist Larson performed a comprehensive psychiatric evaluation of Plaintiff at the Social Security Administration's request. (AR 496-502.) Plaintiff reported that she "had been looking for work but stopped trying because of recent physical problems which included having gallbladder surgery" but was "starting to feel somewhat better and is considering looking for work." (AR 497.) Plaintiff reported that she was abused as a child but had not been treated for those issues. (Id.) Plaintiff "occasionally" had panic attacks in which her heart would race, but she had "not sought any significant psychological treatment programs" for them. (Id.) Plaintiff reported depression "a few days a week" and said that medication had been "somewhat helpful." (Id.) Plaintiff also reported "some problems with her memory" and "difficulty concentrating" and said she had to write things down so she did not forget them. (Id.)

Plaintiff said she had "started to argue with her former boss" before she stopped working but reported "good relationships with others" and "fair" relationships with relatives. (AR 499.) Plaintiff could dress and bathe herself, tend to her own hygiene, drive, shop, pay bills, handle cash appropriately, and leave home alone. (Id.) Her daily activities included doing some chores,

watching television, and reading. (Id.) She reported occasional difficulty making decisions, some difficulty focusing her attention, and some difficulty completing household tasks because of pain. (Id.)

Upon examination, Dr. Larson noted that Plaintiff's mood was "mildly depressed and anxious" but she had good eye contact and interpersonal contact and was "generally cooperative." (AR 499-500.) Plaintiff was alert and oriented, with normal speech, "coherent and organized" thought processes, "relevant and non-delusional" thought content, at least average intelligence, and fair insight and judgment. (AR 499-501.) Plaintiff was able to recall three items immediately and two after five minutes, perform serial threes, correctly calculate change for a dollar, spell the words "cat" and "world" forward and backward, follow a conversation, interpret a proverb, and describe similarities and differences. (AR 500-01.)

Dr. Larson diagnosed mood disorder "not otherwise specified" and "PTSD features." (AR 501.) He assigned a Global Assessment of Functioning ("GAF") score of 55 "because of her combination of physical and mental health problems."[6] (Id.) Dr. Larson opined

---

[6] Previous editions of the Diagnostic and Statistical Manual of Disorders ("DSM") stated that a GAF score represents a rating of overall psychological functioning on a scale of 0 to 100. See, e.g., Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Disorders, Text Revision 34 (4th ed. 2000). A GAF score in the range of 51 to 60 indicated "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. The GAF score was dropped from the most recent edition of the DSM, however, because of its "conceptual lack of clarity (i.e., including symptoms, suicide risk, and

that Plaintiff's prognosis was "fair with treatment," and she would "be expected to do better with aggressive treatment for her PTSD issues and anxiety issues for which she has not yet received physician treatment." (AR 501-02.) He believed that Plaintiff had an unimpaired ability to "understand, remember, and carry out <u>simple</u> one or two-step job instructions" and "perform work activities without special or additional supervision." (AR 502 (emphasis in original).) She was "mildly" impaired in her ability to "do detailed and <u>complex</u> instructions"; maintain concentration, attention, persistence, and pace; associate with day-to-day work activity, such as attendance and safety; accept instruction from supervisors; maintain regular attendance and perform work on consistent basis. (<u>Id.</u> (emphasis in original).) Plaintiff was "moderately" impaired in her ability to relate to and interact with co-workers and the public. (<u>Id.</u>)

On February 25, 2011, medical consultant R. Paxton, a psychiatrist,[7] reviewed Plaintiff's medical records and completed a psychiatric-review-technique form. (AR 504-14.) Dr. Paxton noted that Plaintiff had an affective disorder (AR 504) that resulted in mild restriction of activities of daily living; mild difficulty in maintaining social functioning; moderate difficulty

---

disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Disorders</u>, 16 (5th ed. 2013).

[7] Dr. Paxton's electronic signature includes a medical specialty code of 37, indicating psychiatry. (AR 504); <u>see</u> Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), https://secure.ssa.gov/poms.nsf/lnx/0426510090.

in maintaining concentration, persistence, or pace; and "one or two" episodes of decompensation (AR 512).

On March 24, 2011, medical consultant M. McGinnis[8] completed a mental-RFC-capacity assessment. (AR 523-25.) McGinnis reviewed the evidence in Plaintiff's file and opined that she was not significantly limited in her ability to remember locations and worklike procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruption; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers or peers; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals and make plans independently of others. (AR 523-24.) McGinnis found that Plaintiff was "moderately limited" only in her ability to understand, remember, and carry out detailed instructions and

---

[8] The assessment does not state whether McGinnis is a doctor or psychologist or has any specialty.

interact appropriately with the general public. (Id.) Plaintiff was not "markedly limited" in any category. (Id.) McGinnis opined that Plaintiff had "sufficient" "[c]oncentrative" and "[a]daptive" capacity and "the capacity to do simple level work at two hour intervals in a non public setting." (AR 525.)

On May 23 and 24, 2011, respectively, medical consultants K.J. Loomis, a psychiatrist, and Thu N. Do, a general practitioner,[9] reviewed Plaintiff's record and affirmed McGinnis's opinion. (AR 535.)

On September 27, 2011, a doctor at Arrowhead Regional Medical Center noted that Plaintiff's depression was "suboptimally controlled currently b/c [Plaintiff] weaned herself off of Zoloft on her own." (AR 559.) The doctor noted that Plaintiff had been "doing very well when [she] was on" Zoloft and advised her to restart it at 50 milligrams. (AR 559-60.) On October 25, 2011, a doctor noted that Plaintiff "feels much better than before since she restarted her Zoloft; does cry at times, but overall feels much better." (AR 558.) Plaintiff reported that she "tried to see psych" at a clinic three times "but was told she is fine [and] doesn't need to see them." (Id.) The doctor advised Plaintiff to increase her dose of Zoloft to 100 milligrams. (AR 557.)

On November 10, 2011, Plaintiff reported to a doctor that

---

[9] Dr. Do's electronic signature includes a medical specialty code of 12, indicating family or general practice. (AR 535); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), https://secure.ssa.gov/poms.nsf/lnx/0426510090.

she didn't "feel she [was] ready to undergo Hep C [treatment]" and was "getting more nervous & depressed as the time [came] closer to her hepatology [appointment]." (AR 614.) The doctor noted that Plaintiff "appears more anxious & nervous today" and advised her to continue taking Zoloft and Vistaril[10] and follow up with behavioral health. (613-14.) On November 18, 2010, a doctor noted that Plaintiff had a history of anxiety and depression. (AR 669.) The doctor also noted that "Zoloft doesn't seem to be helping" and that Plaintiff was "only taking Zoloft 25mg [at] present." (Id.) On December 9, 2010, a doctor at Arrowhead Regional Medical Center noted "suboptimal control" of Plaintiff's "depression/anxiety" and instructed her to increase her dosage of Zoloft, first to 50 milligrams and then to 100 milligrams. (AR 325.)

In her July 27, 2012 decision, the ALJ summarized Dr. Larson's findings (AR 34-35) and accorded "great weight" to his assessment of Plaintiff's limitations because he "personally observed and examined" Plaintiff (AR 38). The ALJ stated that she had "accommodated" Dr. Larson's assessment by limiting Plaintiff's RFC to "no jobs requiring hypervigilence, high stress or intense concentration." (Id.) The ALJ "considered" but did "not give[] great weight to the determinations of the State agency mental medical consultants," noting that Dr. Larson's

---

[10] Vistaril, or hydroxyzine, is used to relieve the itching caused by allergies, control the nausea and vomiting caused by various conditions, and treat anxiety and the symptoms of alcohol withdrawal. Hydroxyzine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682866.html (last updated Sept. 1, 2010).

opinion was "more consistent with the record as a whole" and that the consultants' limitation to simple, nonpublic work was "inconsistent with [Plaintiff's] admitted level of functioning." (Id.)

### 3. Discussion

Plaintiff contends that in formulating an RFC limitation to "no jobs requiring hypervigilance, high stress or intense concentration" (AR 38), the ALJ "minimiz[ed]" Dr. Larson's findings of mild limitations in her ability to perform detailed and complex instructions; maintain concentration, attention, persistence, and pace; associate with day-to-day work activity; accept instructions from supervisors; maintain regular attendance; and perform work activities on a consistent basis (J. Stip. at 10-11). But the ALJ's RFC finding in fact largely accommodates those findings. For example, any mild limitations in performing detailed and complex instructions and maintaining concentration, persistence, and pace are accommodated by the RFC limitation to jobs that do not require intense concentration, hypervigilance, or high stress. (AR 31.) Any mild limitations in associating with day-to-day work activity, including attendance and safety, are accommodated by the limitation to jobs permitting Plaintiff to be absent or off-task for 10 percent of the workweek and not involving "work at unprotected heights, around dangerous moving machinery or other hazards." (Id.) Any mild limitations in maintaining attendance and performing work activities on a consistent basis are also accommodated by the requirement that Plaintiff be permitted to be off task or absent up to 10 percent of the time. (Id.)

15

Plaintiff correctly argues, however, that the ALJ failed to accommodate Dr. Larson's finding of "moderate[]" limitations on Plaintiff's ability to "interact with co-workers and the public." (AR 502.) Nothing in the ALJ's RFC, including the limitation to "no jobs requiring hypervigilance, high stress or intense concentration" (AR 38), accommodates those moderate impairments. See Bain v. Astrue, 319 F. App'x 543, 545-46 (9th Cir. 2009) (remanding for further proceedings when ALJ, among other things, "specifically credited" examining physician's finding that Plaintiff had moderate impairment in ability to interact with public, supervisors, and coworkers but "failed to include [it] in the RFC finding"); Hacker v. Astrue, No. EDCV 08-1559-MAN, 2010 WL 1268012, at *5 (C.D. Cal. Mar. 31, 2010) (RFC assessment for light work "with no significant exposure to hazards such as unprotected heights, or dangerous machinery, and no production quota work" did not accommodate state agency's finding that claimant was "moderately limited in his ability to interact appropriately with the general public" (alterations and internal quotation marks omitted); compare Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (finding that RFC limitation to "work in which there is no public contact, and where it is recognized that [claimant] works best alone" was "entirely consistent" with treating physician's finding of "marked" limitations in social functioning).

Nor did the ALJ give any reason for rejecting Dr. Larson's finding; instead, she permissibly accorded "great weight" to his opinion, noting that he "personally observed and examined" Plaintiff and his opinion was "consistent with the record as a

whole." (AR 38); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining doctor's opinion "alone constitutes substantial evidence, because it rests on his own independent examination of [plaintiff]"); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("greater weight is accorded to the opinion of an examining physician than a non-examining physician"); §§ 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"), 416.927(c)(1) (same); §§ 404.1257(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."), 416.927(c)(4) (same). Indeed, Dr. Larson's finding that Plaintiff was moderately limited in her ability to deal with coworkers and the public was consistent with the findings of McGinnis and Drs. Loomis and Do, who all agreed that Plaintiff should be limited to nonpublic work. (AR 525 (McGinnis's finding that Plaintiff could do "simple level work at two hour intervals in a non public setting"), 535 (Drs. Loomis's and Do's case analysis affirming RFC for nonpublic simple, repetitive tasks).) Moreover, the ALJ's reason for rejecting the medical consultants' limitation to "simple nonpublic work" - that it was "inconsistent with [Plaintiff's] admitted level of functioning" (AR 38) - is unpersuasive given that Dr. Larson's opinion, which the ALJ fully credited, similarly reflects that Plaintiff's ability to deal with the public and coworkers was moderately limited.

The ALJ's error, moreover, cannot be considered harmless. The ALJ ultimately concluded that Plaintiff was not disabled because she could perform her past relevant work in a tire-and-

rim shop, but that job clearly required a large amount of interaction with customers and employees. Plaintiff testified that in that job "all [she] did was pretty much deal with the customer as far as if they had to make the purchase of a tire" (AR 96), and she "took care of the money, anything that was sold from the counter" (AR 88; see also AR 249 (work report stating that Plaintiff was "cashier" and "answered telephone," among other things)). Plaintiff also hired and fired employees (AR 96) and supervised two to four employees "throughout the entire day" (AR 249). Although some evidence in the record undermines the doctors' limitation to nonpublic work - for example, Plaintiff's dining out a couple times a week (AR 264) and her apparently relatively healthy mental state when compliant with her medications - the Court cannot say that the ALJ's error was "inconsequential to the ultimate disability determination."[11] See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

Plaintiff is entitled to remand on this ground.

B.   Remaining Issues

Plaintiff asserts that the ALJ erroneously determined she could perform her past relevant work at a tire-and-rim shop (J. Stip. at 3-6, 9-10) and failed to provide clear and convincing reasons to discredit her subjective symptom testimony (id. at

---

[11] The ALJ also limited Plaintiff to crouching only "rarely" and handwriting only "occasionally" (AR 31), but Plaintiff asserted that in her job at the tire-and-rim shop she had to crouch for one hour and write, type, or handle small objects for six hours throughout the day (AR 249). The ALJ should address these possible inconsistencies on remand.

18

15-17). Because the Court finds that the ALJ's assessment of the medical evidence was in error, it is not necessary for it to address the remainder of Plaintiff's arguments. See Negrette v. Astrue, No. EDCV 08-0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony). On remand, the ALJ will necessarily reevaluate Plaintiff's ability to perform her past work and her credibility after reconsidering the examining and consulting doctors' opinions and, if appropriate, reassessing Plaintiff's RFC.

## VI. CONCLUSION

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Accordingly, remand, not an award of benefits, is the proper course in this case. See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136 (9th Cir. 2011) (remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability). As noted above, on remand, the ALJ should specifically address Dr. Larson's findings of moderate impairment in dealing with coworkers and the public and the consulting doctors' limitation to nonpublic work, explain the weight she has given those opinions, and reassess Plaintiff's RFC if appropriate. After doing so, the ALJ should reassess Plaintiff's credibility and her ability to perform her

past job or any other work.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on all parties or their counsel.

DATED: March 26, 2014

*(signature)*
JEAN ROSENBLUTH
U.S. Magistrate Judge